UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

```
-------------------------------------------------------X
IN RE                                     :    CASE NO. 11-10001R
                                          :
BELTWAY 8 ASSOCIATES,                     :    CHAPTER 11
LIMITED PARTNERSHIP                       :
              DEBTOR.                     :    REORGANIZATION
-------------------------------------------------------X
```

### FST WATERMARKE, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) AND (d)(2)

FST Watermarke, LLC ("FST"), files this Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(21) (the "Motion"). In support of this Motion, FST respectfully represents as follows:

#### I. JURISDICTION AND CODE AUTHORITY

1. This Court has jurisdiction to hear and determine this Motion and over the persons and property affected hereby pursuant to 28 U.S.C. §§157 and 1334. Venue of this proceeding and the Court's jurisdiction over same are proper in this district under 28 U.S.C. §§1408 and 1409. This is a core proceeding under 28 U.S.C. §§157(b)(2)(A) and (N).

2. FST is entitled to the relief requested pursuant to 11 U.S.C. §§ 101(51B) and 362, and Local Rule 4001-1.

#### II. BACKGROUND

A. **Bankruptcy Proceeding and Debtor's Schedules**

3. On January 3, 2011 (the "Petition Date"), Beltway 8 Associates, Limited Partnership (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"), in the Bankruptcy Court for the Middle District of

Louisiana. The Debtor identified the nature of its business as a single asset real estate as defined in 11 U.S.C. § 101(51B).

4. The Debtor is the developer and owner of a 280 unit residential apartment complex that operates as the "Watermarke Apartments" in Houston, Texas. The partners of the Debtor are Beltway 8 Associates LLC (1%). Nick Saban (49.5%) and Spinosa Class Trust (59.5%). There are no meaningful assets, aside from the Watermarke Apartments, that can be administered in this proceeding.

5. The Debtor scheduled FST on Schedule D as a disputed claimant holding the first lien mortgage on the Watermarke Apartments in the amount of $22,219,535. Also listed on Schedule D, in the total amount of $969,235, are the following claims: (i) Cypress-Fairbanks ISD for outstanding property tax liens pursuant to a consent judgment in the amount of $475,063 incurred 2009-2010; (ii) Don Sumners – Tax Assessor for outstanding property tax liens pursuant to a consent judgment in the amount of $306,109; and (iii) West Harris County MUD #11 for outstanding property tax liens pursuant to consent judgment in the amount of $188,063. During the pendency of the case, the Debtor paid a total of $458,682.70 to the above referenced taxing authorities. See Disclosure Statement page 9. The tax liability for 2011 is a post filing lien and it is believed the tax debt (both pre-petition and post petition) is larger than the amount shown on the schedules and Disclosure Statement.

6. The Debtor, on Schedule A, lists the value of the Watermarke Apartments as $25,000,000. No third party evaluation exists for this proposition in light of the following facts:

 1. The Debtor has not found financing to take out the existing debt;

 2. The Debtor had to borrow over $2,000,000 since the properties acquisition to fund it as a going concern; and

3.  The Debtor was unable to pay its tax debt prior to filing.

7.  The Debtor lists tenant security deposits of $65,880 on Schedule E.

8.  The Debtor lists $2,201,188 in claims on Amended Schedule F. Majority of the general unsecured claims, $2,135,574 or about 97% of the outstanding amount, is owed to 6444 Associates, L.L.C. ("6444 Associates"). 6444 Associates is owned by Joseph T. Spinosa. The remaining $65,614 of unsecured claims is owed to about 44 claim holders.

9.  On April 4, 2011, the Debtor filed its *Plan of Reorganization Under Chapter 11 of the Bankruptcy Code as of April 4, 201,* (the "Plan") [P-93]; and *Disclosure Statement for Plan of Reorganization Under Chapter 11 of the Bankruptcy Code as of April 4, 2011,* (the "Disclosure Statement") [P-94].

**B.   Loan Documents**

10. On August 21, 2008, the Debtor and Compass Bank entered into a Construction Loan Agreement in the principal amount of $21,250,000. See Exhibit A. The Construction Loan Agreement was evidenced by a Promissory Note. See Exhibit B. The applicable rate of interest of the attending Promissory Note is to equal 200 basis points (2.0%) in excess of the LIBOR[1] for the one month reference, provided that the interest shall not be less than 4% per annum. On the same day, the Debtor and Compass Bank entered into an addendum to the Construction Loan Agreement. See Exhibit C. The Construction Loan Agreement indicates that the funds are for the refinance and refurbishment of the Watermarke Apartments.

11. Concurrently with the Construction Loan Agreement, on August 21, 2008, the Debtor and Compass Bank entered into a Future Advance Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing securing the obligations for the Construction Loan Agreement. See Exhibit D. The loan matured on August 21, 2010.

---

[1] LIBOR is the London Interbank Offered Rate as quoted on Reuters Monitor Money Rates Services.

12. The Debtor did not meet the terms of its loan agreements and Compass Bank determined not to renew the Construction Loan Agreement, and marketed the loan for sale. On November 24, 2010, Compass Bank entered into a Loan Sale Agreement with FST. See <u>Exhibit E</u>. Under the agreement, Compass Bank sold its right, title and interest in the Construction Loan Agreement and the attending loan documents. FST initiated foreclosure proceedings. The foreclosure proceedings were halted due to the filing of this bankruptcy proceeding.

C.  **Terms of the Plan**

13. The Debtor indicates that its Plan provides for the payment of allowed claims from the cash flow generated from the operations of the apartment complex. See Disclosure Statement, page 2. Equity is not to receive any distributions unless the Debtor is current with Plan payments to FST and all other allowed claims are paid in full. The Debtor asserts that the "financial outlook for the Debtor is very bright" because Houston is considered the 5th best apartment market in the country and the best employment expansion nationwide. See Disclosure Statement, page 9. The Debtor asserts that no new supply will be entering the market for "quite some time." See Disclosure Statement, page 9. The Debtor contends it will be able to operate the next two years without having to offer concessions and "achieve substantially higher rental rates." See Disclosure Statement, page 9-10. Thus, by allowing a five year extension on its debt to FST (as discussed herein), the Debtor will be able to refinance the loan and pay off FST. See Disclosure Statement, Page 10.

14. Pursuant to the Plan, Unclassified/Allowed Administrative Expense Claims are estimated as approximately $45,000.00 as of March 31, 2011. These claims are owed to Steffes, Vingiello & McKenzie and Fleenor, Green & McKinney Professionals who are to be paid through the Effective Date, and are to file a final fee application within 30 days of the Effective

Date. (note – there will be additional fees and expenses incurred during the plan confirmation process so the $45,000 will increase.) Plan provides that holders of administrative claims should file a claim and request a hearing within thirty (30) days of the Effective Date. (no estimate of administrative claims aside from professional fees).

15. Pursuant to the Plan, Unclassified/Allowed Priority Tax Claims are estimated as $510,533.14 in allowed priority tax claims. Payments on tax claims will be made at the option of the Debtor as (a) on the Effective Date paid cash; or (b) commencing 45 days after the Effective Date, quarterly payments plus allowed interest for a period not to exceed 5 years from the order for relief.

16. Pursuant to the Plan, Class 1 – Tenant Deposit Claims, each holder of a tenant deposit is to retain all legal, equitable, and contractual rights under state law.

17. Pursuant to the Plan, Class 2 – FST Watermarke, LLC Secured Claim is estimated as $21,250,300 plus accrued unpaid interest through the confirmation date and any additional allowed amounts under 11 U.S.C. § 506(b). The Debtor proposes that on the Effective Date, all accrued unpaid interest calculated at the non-default rate, plus any amounts allowed by section 506(b) are to be capitalized and added to the $21,250,000 (the "New Principal Balance") due under the Construction Loan Agreement. The maturity of the Promissory Note would be extended to sixty (60) months from the Effective Date (the "New Maturity Date"). The Debtor will repay the New Principal Balance with interest accruing at the non-default contractual rate (but not less then 4%), in equal monthly installments. The interest will be calculated based upon a thirty (30) year amortization schedule with payments beginning thirty (30) days after the Effective Date. The balance will be due on the New Maturity Date.

18. Pursuant to the Plan, Class 3 – General Unsecured Claims are estimated as $2,200,736. Of this amount, $65,162 in claims will receive 50% of any allowed claim, with the remaining amount accruing interest at 4% per annum and paid on the year anniversary of the Effective. Date. The remaining 97%, or $2,135,574, owed to 6444 Associates, is not to receive any distribution until: (a) all unclassified claims are paid in full; (b) all other Class 3 allowed claims are paid in full; and (c) the Debtor is current in its payments to FST. 6444 Associates is to receive 4% per annum interest on the money loaned, based on a thirty (30) year amortization accruing from the Effective Date. Once all the conditions are met, the Debtor will repay 6444 Associates, and the total amount of the claim will balloon and is payable seventy-two (72) months after the Effective Date.

19. Pursuant to the Plan, Class 4 – Equity Interest will retain those interest, but will receive no distribution unless the following conditions are met: (a) all unclassified claims are paid in full; (b) all Class 3 claims, except for 6444 Associates, are paid in full; and (c) the Debtor is current in its payments to FST and current in its payments to 6444 Associates.

### III. RELIEF REQUESTED

20. By this Motion, FST is seeking relief from the automatic stay to exercise its non-bankruptcy law remedies against the Debtor's collateral, the Watermarke Apartments.

### IV. BASIS FOR THE RELIEF REQUESTED

21. By this Motion FST is seeking relief from the automatic stay under section 362(d)(2). Relief may be granted if both prongs are met under section 362(d)(2). Under the first prong, the debtor must have little or no equity in the subject property. 11 U.S.C. § 362(d)(2)(A). Under the second prong, the subject property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2)(B). The burden of proof with respect to relief from the stay is set forth in 11

U.S.C. § 362(b); which provides that the party requesting the relief has the burden of proof on the debtor's equity in the property and the party opposing the relief has the burden of proof on all other issues.

22. In addressing the first prong, equity, as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it." See *Sutton v. Bank One, Texas Nat'l Assoc.*, 904 F.2d 327, 329 (5th Cir.) (internal citations omitted). Courts have determined that creditors need to prove that the debtor has little or no equity in the subject property. *See, e.g., In re Skains*, 46 B.R. 500, 502 (Bankr. W.D. La. 1984)("The law has never meant that there must be absolutely no equity in property."). Thus, for the debtor to have equity in a property there must be an equity cushion exceeding the encumbrances.

23. The encumbrances against the subject property in include: (1) priority tax claims - $510,533; and (2) FST - $22,219,535[2] plus accrued interest. FST, based on his experience in the apartment rental market, asserts that the value of the Watermarke Apartments is less than the outstanding liens and claims. FST asserts that the Debtor has no equity in the property of the estate.

24. Once section 362(d)(2) is met, the burden shifts to the Debtor to establish that the Watermarke Apartments are necessary for an effective reorganization. In addressing the second prong of section 362(d)(2), the Fifth Circuit affirmed the bankruptcy court's analysis and application of *Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 370 (5th Cir.1987), *aff'd* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("*Timbers*"). See *Canal Place Ltd. Partnership v. Aetna Life Insurance Co. (In re Canal Place Ltd. Partnership)*, 921 F.2d 569, 577 (5th Cir.1991). Pursuant to *Timbers,* the court should "evaluate the reorganization profile of the

---

[2] FST is using the scheduled amount for purposes of this Motion, but asserts that this amount may differ due to additional interest charges and other amounts to which FST may be entitled to.

{00314897-3}          7

debtor in order to determine whether there was a reasonable prospect for a successful reorganization within a reasonable time before allowing the stay to remain in effect." *Canal Place Ltd. P'ship,* 921 F.2d at 571. Thus, this means there must be a reasonable possibility of a successful reorganization within a reasonable time.

25. FST asserts that the Debtor is unable to confirm a reorganization plan. In order to meet the requirements of 11 U.S.C. § 1129(b)(1), the Debtor must present a plan that is "fair and equitable". A plan is not fair and equitable unless the holder of a secured claim receives payments, the present value of which is equal to the value of the collateral. Thus, to comply with section 1129(b)(2), a debtor is required to pay a secured creditor interest at the prevailing market rate for a comparable loan. Here, pursuant to the terms of the Plan, the Debtor proposes to make payments at a rate of 2% points over the LIBOR one month reference period. But no less then 4%. Here, in today's climate, that means the Debtor will be repaying the loan at 4%. This rate does not meet the requirements of 1129(b)(2)(a) to confirm the Plan over the objection of FST.

26. The Plan fails to meet the 1129(a) test of feasibility. Based upon the Debtor's performance to date and the need to refinance the property in five (5) years, the Debtor will be unable to: (i) meet the monthly payments if libor rate increases by 400 basis points over the next five (5) years; or (ii) the property does not increase in value by over 15% over the next five (5) years. In addition, no 100% financing of real estate is available at a four (4%) percent rate for a five (5) year period.

27. The Debtor proposes to make payments from cash flow, however, the Debtor's pro forma omits line items for: (1) payment of United States Trustee Fees; (2) payment of professional fees; (3) deferred maintenance costs. FST believes that the property has substantial deferred maintenance issues that need to be addressed and it is unclear from the pro forma if the

costs of deferred maintenance is included and if it is, if the amount is correct. Thus, it is unclear if the Debtor will in fact have sufficient cash flow to make Plan payments.

28. Accordingly, as Debtor has no equity in the property and no reasonable prospect of a successful reorganization; FBT is entitled to relief from the stay pursuant to section 362(d)(2) in order to foreclose on the property.

**WHEREFORE**, FST Watermarke, LLC pays that this Court grant it relief from the automatic stay imposed by section 362 to pursue non-bankruptcy legal remedies and for all other relief that is just and equitable.

Respectfully submitted,

*/s/Douglas S. Draper*
Douglas S. Draper, La. Bar No. 5073
Leslie A. Collins, La. Bar No. 14891
Greta M. Brouphy, La. Bar No. 26216
**HELLER, DRAPER, HAYDEN,
 PATRICK & HORN, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Telephone: 504-299-3300
Fax: 504-299-3399
E-mail: ddraper@hellerdraper.com
E-mail: lcollins@hellerdraper.com
E-mail: gbrouphy@hellerdraper.com
**Counsel for FST Watermarke, LLC**